## Case No. 340.

### Ex parte AMY.

### [1 Cranch, C. C. 392.][1]

Circuit Court, District of Columbia. April, 1807.

#### SLAVES—SUIT FOR FREEDOM—LIABILITIES OF OWNER.

If the owner of a slave who sues for freedom will not give the security required by law, he must pay the prison-fees for the commitment and safe custody of the slave pending the suit in the county of Alexandria.

Negro Amy, on her petition for freedom, having at November term, 1805, been delivered to the custody of the marshal by order of the court, and none of the material facts stated in the petition being proved by affidavit or otherwise, to the satisfaction of the court, it is ordered that she be delivered to Joseph Thomas, who is stated, in her petition, to have held her in slavery, upon his paying the marshal's fees for her custody, while in actual confinement under the said order.

---

### AMY v. SHELBY COUNTY.

### [See Case No. 345.]

---

### AMY, (UNITED STATES v.)

[See United States v. Amy, Case No. 14,445.]

---

## Case No. 341.

### The AMY WARWICK.

### [2 Spr. 123;[2] 24 Law Rep. 335.]

District Court, D. Massachusetts. April, 1862.[3]

PRIZE COURTS—JURISDICTION — CIVIL WAR—BELLIGERENTS — ENEMY'S COUNTRY — BLOCKADE—POWERS OF PRESIDENT.

1. The district courts of the United States are permanent prize tribunals, and take cognizance of questions of prize by virtue of their general jurisdiction.

2. Prize courts are subject to the instructions of their own sovereign. In the absence of such instructions, their jurisdiction and rules of decision are to be ascertained by reference to the known powers of such tribunals, and the principles by which they are governed under the public law and the practice of nations.

3. The United States may be engaged in war, and have all the rights of a belligerent, without any declaration by congress. In such a war, it would be the duty of the president to exert all his powers as commander-in-chief of the army and navy to capture or destroy the enemy. And if, under his instructions, an enemy's ship should be taken and sent in for adjudication, the prize court must proceed to decide the question of prize upon the principles of public law.

[See note at end of case.]

---

[1][Reported by Hon. William Cranch, Chief Judge.]

[2][Reported by Hon. Richard H. Dana, Jr., and here reprinted by permission.]

[3][Affirmed by circuit court, (decree nowhere reported; opinion not now accessible.) Affirmed by supreme court sub nom. The Prize Cases, 2 Black, (67 U. S.) 635.]

4. The hostilities which were commenced, and have been prosecuted, by the rebel confederates against the United States, constitute war in the legal and constitutional sense of that term.

[See note at end of case.]

5. In this war, the rebels are, at the same time, belligerents and traitors, and subject to the liabilities of both. The United States sustains the double character of a belligerent and sovereign, and has the rights of both. The temporary non-user of any such rights is not a renunciation of them, but they may be called into practical exercise at pleasure. The United States has full belligerent rights, which are in no degree impaired by the fact that their enemies owe allegiance, and have added the guilt of treason to that of unjust war.

[Cited in Miller v. U. S., 11 Wall. (78 U. S.) 307.]

[See note at end of case.]

6. If a hostile power, either from without or within our territory, shall make formidable war upon the United States, the president is bound to use the army and navy to carry on the war effectively against such an enemy. He may do so in the manner, and by the measures, usual in modern civilized warfare. One of the most familiar of these is the capture of an enemy's property, public and private, on the ocean.

7. The statute of 1807, c. 39, authorizes the president to employ the army and navy to suppress an insurrection. The manner in which they are to be used is left to the discretion of the president, guided by the usages and principles of civilized war. These, undoubtedly, authorize the capture of enemy's property at sea.

[See note at end of case.]

8. What is enemy's property is a judicial question. Residence of the owner in the enemy's country may be of such a character as to stamp property conclusively as hostile. The court may be compelled to decide what shall be deemed enemy's country.

[Cited in Keppel's Adm'rs v. Petersburg R. Co., Case No. 7,722.]

[See note at end of case.]

9. Richmond, in Virginia, held to be enemy's country, and property captured on the ocean belonging to a permanent resident of that place, to be lawful prize.

[See note at end of case.]

10. In establishing the blockade, the president exercised a great belligerent right. He could not prohibit or restrict the commerce of any state by a mere municipal regulation. The blockade, and the orders of the president to the navy, by which captures have been made, have been confirmed by congress by Stat. 1861, c. 63. This has the force of instructions to prize tribunals to regard those proceedings of the president as legal and valid.

[See note at end of case.]

11. The president, as commander-in-chief, may instruct the officers of the navy to capture, or to abstain from capturing, certain vessels or cargoes. The statute of 1861, c. 28, adds to the means of the president, but in no degree detracts from his previous authority to treat persons or property as he shall deem best.

12. The proviso in the 24th section of the crimes act of 1790, c. 9, and the analogous provision in the constitution, art. 3, § 3, do not preclude the government from having a forfeiture or condemnation of property, at least in cases where the owner has not been convicted of treason.

13. The acts of congress, passed in the summer of 1861, were intended to make the prosecution of the war more efficient, and, in no degree, to curtail the authority which the pres-